IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GABRIELA MAYRIDES,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:08-CV-535 |
| v. | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **DELAWARE COUNTY,** | : | Magistrate Judge Abel |
| **COMMISSIONERS,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Motion for Judgment on the Pleadings (Dkt. 27) of Defendants Delaware County Board of Commissioners ("Board"), Delaware County, Al Myers ("Myers"), Al Davis ("Davis"), Nathan Andrew Evans ("Evans"), Deputy Fletcher ("Fletcher"), Sergeant Dore ("Dore"), A. Banfield ("Banfield"), Timothy M. Schambs ("Schambs"), J. Elverson ("Elverson"), Mark Hickman ("Hickman"), Kari Dotson ("Dotson"), and John or Jane Doe(s) (collectively, the "Delaware Defendants").[1] For the reasons set forth below, this Court **GRANTS** the Delaware Defendants' Motion.

**II. BACKGROUND**

**A. Factual Background**

Plaintiff Gabriela Mayrides ("Mayrides") is the duly appointed Administrator of the Estate of Gabriel M. Mayrides, decesased. The Delaware Defendants are individuals who are

---

[1] Also before the Court is Plaintiff's Motion for Leave to File a Sur-Reply (Dkt. 35), which is hereby **GRANTED**.

alleged to have been involved in the investigation of the death of Gabriel Mayrides ("Decedent").

### 1. The 911 Calls

Decedent was involved in a romantic relationship with Darcie Dodd ("Dodd"). During the course of their relationship certain disputes arose between the Decedent and Dodd that led to the making of 911 telephone calls and subsequent police involvement.

The first telephone call took place on December 23, 2005, and was made to 911 from 8927 Oak Village Boulevard, Lewis Center, Ohio, the residence of the Decedent. The 911 call was recorded as a "Hang Up/Open Misdial" and was not investigated by the Delaware County Sheriff. The incident record associated with the call notes that no report was taken**.**

On February 10, 2006, a second call was made to 911 by the Decedent. During the call, the Decedent complained about Dodd, indicating that she would not leave his apartment. The incident record associated with the call notes that no report was taken.

On April 19, 2006, another 911 call was made. Speaking to the 911 operator, the Decedent complained of being assaulted and hit in the face by Dodd. The 911 operator told the Decedent not to yell at her and complained about the Decedent's language. The 911 operator then hung up on the Decedent. A few minutes later, Dodd called 911 and reported a domestic dispute. As a result, the Delware County Sheriff investigated disorderly conduct, profane language, a 911 hang-up, and an argument at the residence of the Decedent. The incident record associated with the investigation notes that an offense may have occurred.

On April 23, 2006, Dodd called 911 claiming she found a note in which the Decedent had written that he was going to kill himself. As a result of this 911 telephone call, Dodd signed a

statement, given to the Delaware County Sheriff's Department, claiming that the Decedent had previously made suicidal threats.

On April 30, 2006, The Delaware County Sheriff's Department was told by the Decedent that he had "no desire to kill himself." (Am. Comp. ¶ 41.)

On May 2, 2006, a neighbor of the Decedent telephoned 911 to report domestic violence involving the Decedent and Dodd. The neighbor, Simone Lilac, reported that Dodd was lying facedown in front of the Decedent's apartment after being thrown down on the concrete.

### 2. Gabriel Mayrides' Death

In the early morning of May 6, 2006, Delaware County officials were dispatched to the residence of the Decedent to investigate a 911 emergency call and a report of a suicide attempt by gunshot. Evans was the first officer present at the scene and discovered Gabriel Mayrides lying on his bed with a semi-automatic pistol in his right hand. Evans and other investigators took photographs of the scene. Medics 361 and 362 arrived at the Decedent's residence. They checked for vital signs and, finding none, pronounced the Decedent dead at 00:29 hours on May 6, 2006.

Dodd was also present at the Decedent's residence and was reported to be hysterical by Evans and Schambs. Dodd told the police officers present that the Decedent had shot himself. Dodd was then transported to St. Ann's Hospital.

The Delaware Defendants participated in conducting an investigation into the death of the Decedent. All persons involved in the investigation concluded that the Decedent committed suicide. In reaching this determination the Delaware Defendants relied upon, among other things, a positive gupowder residue test that had been conducted on the hand of the Decedent

and statements made by Dodd.

## B. Procedural Background

On May 5, 2008, Mayrides initiated a lawsuit against the Delaware Defendants in the Court of Common Pleas of Delaware County, Ohio. On June 3, 2008, the Delaware Defendants removed the case to the U.S. District Court for the Southern District of Ohio. Mayrides filed an Amended Complaint on October 29, 2008 alleging five counts: three state claims for negligence, obstruction of justice and wrongful death, under Ohio law, and two federal § 1983 claims for substantive due process and equal protection violations by the Delaware Defendants. The Delaware Defendants filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that Mayrides lacks standing, that she has failed to establish a constitutional violation, and that they are entitled to qulified immunity.

## III. STANDARD OF REVIEW

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 553 F.3d 430,

434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

Although liberal, this standard requires more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (internal quotations omitted)). While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12(c) motion is granted only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.,* 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. LAW AND ANALYSIS

### A. § 1983 Claims

Mayrides alleges the Delaware Defendants violated the Decedent's rights: (1) to life and liberty protected under the substantive component of the due process clause; and (2) to the equal protection of the laws. (Pl. Resp. ¶ 12.) The Delaware Defendants assert that Mayrides' claims lack standing, are not predicated on a constitutional right, and are barred under the doctrine of qualified immunity.

To establish a cause of action under § 1983, Mayrides must establish two elements: (1) deprivation of a right secured by the Constitution or laws of the United States; and (2) caused by a person acting under color of state law. *McQueen v. Beecher Cmmt'y Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).

### 1. Standing

The Delaware Defendants argue that Mayrides lacks standing to bring a claim under § 1983. The question of standing is a threshold inquiry to be determined by this Court prior to exercising jurisdiction. *Allstate Insur. Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985). The Supreme Court has set forth the requirements for standing as a three-part test. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). An individual has standing if she: (1) suffers an injury in fact that; (2) is fairly traceable to the alleged misconduct; and (3) is redressible by the relief sought. *Id.* at 475. The Sixth Circuit has interpreted the second prong to mean that "the injury is indeed fairly traceable to the defendant's acts or omissions." *United States v. Perry*, 360 F.3d 519, 527-28 (6th Cir. 2004). Additionally, the Sixth Circuit has described the redressibility requirement as "the causal connection between the injury and the relief sought. *Id*.

Where the injured party is deceased, the Supreme Court has recognized that "the law of the forum is the reference point in determining the survival of civil rights actions, subject to the important proviso that state law may not be applied when it is inconsistent with the Constitution and laws of the United States." *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) (quoting *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978)). In *Jaco*, the Sixth Circuit explicitly held that a mother had standing to bring a § 1983 claim in her capacity as representative of her son's

estate. *Id*. at 241 (holding "the decedent's civil rights claim, a personal cause of action, may be pursued in the name of the decedent's personal representative....Insofar as [plaintiff] qualifies as her son's representative under Ohio law, she has standing to prosecute the § 1983 claims arising from his death").

Whether Mayrides has standing to bring § 1983 claims on behalf of the Decedent's estate is distinct from whether her case succeeds on the merits. Here, Mayrides has met all of the requirements set forth by the Supreme Court for standing under Article III of the Constitution. She has alleged an injury: a substantive due process violation and an equal protection claim. She has also alleged that the injury is traceable to the conduct of certain municipal officials who by their affirmative acts placed the Decedent in danger. Lastly, she has alleged that the injury to the Decedent is redressible through damages and other relief seen as appropriate by this Court. Mayrides, therefore, has standing, as Administrator of the Decedent to bring § 1983 claims.

## 2. Constitutionally Protected Claim

### a. Substantive Due Process

"[N]othing in the language of the Due Process Clause itself," the Supreme Court has stated, "requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). While "[a] State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes," the Supreme Court has reasoned that such duties will not be "thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment." *Id*. at 202-03. There are two established exceptions to this rule: (1) the (1) the custody exception and (2) the state-created danger exception. *Id*. at 199-20.

### i. The custody exception

"When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety." *DeShaney*, 489 U.S. at 199-200. The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf. *Stemler v. City of Florence*, 126 F.3d 856, 868 (6th Cir. 1997). The Sixth Circuit defines custody as the "intentional application of physical force and show of authority with intent of acquiring physical control." *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002). Both Mayrides and the Delaware Defendants agree that Gabriel was never in police custody and thus, based on the facts alleged, there is no constitutional violation under the custody exception.

### ii. The State-Created Danger Exception

The Sixth Circuit has expressly recognized the state created danger theory. *Kallstrom v. City of Columbus*, 136 F.3d 1005 (6th Cir. 1998). State liability under a state-created danger theory can be established if the plaintiff shows: (1) "affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence"; (2) the victim faces special danger, in that the "state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large"; and (3) "the state must have known or clearly should have known that its actions specifically endangered an individual." *Id*. at 1066.

When faced with the issue of whether police response to 911 calls, in domestic violence context, can rise to the level of a constitutional violation for purposes of a § 1983 claim, the Sixth Circuit has been hesitant to find a constitutional violation:

> Finally, we are unwilling to say that police response to a citizen's call for
> assistance subjects the officers to potential liability for creating a "special danger"

> premised upon a heightened sense of security. It does not follow from police presence and opinions about the potential danger that a constitutional violation has occurred absent some action on the part of the responding officers that forcibly prevents the citizen who requested help from acting on his or her own behalf, or creates a special danger by enabling a private actor to do something that puts another specifically at risk.

*Perry v. Wiles*, No. 97-3372, 1998 U.S. App. Lexis 7621, at *10 (6th Cir. Apr. 15, 1998). Some courts in this jurisdiction have previously recognized that when a "police officers' *affirmative acts* created or increased the danger" to an individual alleging a deprivation of substantive due process in relation to police response to 911 telephone calls, to support a § 1983 claim. *Smith v. City of Elyria*, 857 F.Supp. 1203, 1210 (N.D. Ohio 1994) (emphasis in original) (holding that a genuine issue of material fact existed as to whether police officers had informed a spouse, who later stabbed and killed his ex-wife, that his ex-wife could not have him removed from her home).[2]

Other courts have refused to hold that police officer response to 911 telephone calls enhanced the danger where the § 1983 plaintiff did not indicate any immediate threat of harm. *Stevens v. Trumbull County Sheriff's Dept.*, 63 F. Supp. 2d. 851, 854 (N. D. Ohio, 1999) (granting summary judgment after finding that the police officer "[d]efendants did nothing to give Plaintiff a heightened sense of security that subjects them to liability" nor did they "place any restraint on Plaintiff such that she was unable to act to protect herself" ).

This Court is hesitant to hold that Mayrides could never make out a successful claim of a constitutional violation under § 1983 based on the state-created danger theory. It is clear from Sixth Circuit jurisprudence that the facts of a particular case are heavily involved in determining

---

[2]The ruling in *Smith* allowed the plaintiff only to survive summary judgment.

the existence of a violation, especially concerning any alleged police response to any 911 telephone calls made.

## 4. Equal Protection

Mayrides also alleges that the Delaware Defendants intentionally discriminated against the Decedent, because he was a male involved in a domestic dispute, in violation of the Fourteenth Amendment.

As a preliminary matter, this Court notes that the Supreme Court has held that equal protection claims can be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Courts in the Sixth Circuit have recognized, as valid equal protection claims, those claims brought by victims of domestic violence. *See Blankenship v. City of Cleveland*, 145 F.3d 1330 (6th Cir. 1998); *Perrino v. City of Newtown Falls*, 972 F.2d 348 (6th Cir. 1992). Domestic violence victims, however, are not members of a class of persons subject to invidious discrimination.³ As such, Mayrides would need to show that any domestic violence response policy of the Delaware Defendants did not have a rational relationship to a legitimate government interest. *Stevens v. Trumbell County Sheriff's Dept.*, 63 F. Supp. 2d 851, 856 (N.D. Ohio 1999). Since "[p]laintiff has not had an opportunity to develop the facts of her case...[p]laintiff can not show that [the Decedent] was treated differently as a victim of domestic

---

³Courts have recognized that it is possible for men to be the victims in domestic disputes and have rejected equal protection claims and analysis in the area of domestic violence, which based only on gender, would trigger intermediate scrutiny. *Eckert v. Town of Silverthorne*, 25 Fed. Appx. 679, 684 (10th Cir. 2001).

violence compared to a non-domestic assault victim." *Id*. at 856-57.[4]

### 3. Qualified Immunity

Qualified immunity can shield government officials from individual civil liability where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978)). This circuit permits a reviewing court to dismiss a claim under Rule 12(b)(6) on the basis of qualified immunity. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987). Qualified immunity is analyzed using an objective standard; and the subjective intent of the defendant is irrelevant. *Blake v. Wright*, 179 F.3d 1003, 1008 (6th Cir. 1999). "Qualified immunity has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state official knows of and disregards an excessive risk to [the victim's] health or safety." *Estate of Sowards v. City of Trenton*, 125 Fed. Appx. 31, 39 (6th Cir. 2005).

The Supreme Court typically employs a two-step analysis to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing

---

[4]This Court also notes that Mayrides's equal protection claim may not meet the standards set forth in this area by the Sixth Circuit. In *Brooks v. Knapp*, the Sixth Circuit found that though the complaint alleged a discriminatory policy or custom which led individual officers to discriminate against the victim, "[t]he complaint ...[did] not sufficiently allege that [the] Officers ..., in their individual capacity, acted in a discriminatory manner toward [the victim], for any reason. Plaintiffs have not sufficiently alleged individual acts of discrimination, let alone discrimination based on [the victim's] membership in a particular class." *Brooks v. Knapp*, 221 Fed Appx. 402, 408 (6th Cir. 2007). The complaint, therefore, failed. *Id*.

*Saucier v. Katz*, 533 U.S. 194, 201(2001))**.**[5]

The Sixth Circuit sometimes adds a third step to its qualified immunity analysis, considering "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)**.** The Sixth Circuit has noted that this third step may increase the clarity of analysis in some cases and that "both the two-step approach and the three-step approach can be said to capture the holding of [*Saucier* ]." *Carter*, 408 F.3d at 311 n.2. In certain factual contexts, however where the existence of a constitutional right is "clearly established", the fact that a violation is sufficiently unreasonable may be implied, and the court has "collapse[d] the second and third prongs in an effort to avoid duplicative analysis." *Estate of Mikinah Smith v. Hamilton County Dept. of Job & Family Servs.*, No. 1:06cv362, 2007 U.S. Dist. LEXIS 64696, at *18 (S.D. Ohio Aug. 31, 2007) (quoting *Caudill v. Hollan*, 431 F.3d 900, 911 n. 10 (6th Cir. 2005)).

### a. Violation of a Constitutional Right

In detailing the law of qualified immunity, the Supreme Court has stated that lower courts should examine "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Here, the issue is whether "a violation could be made out on a favorable view of the [plaintiff's] submissions." *Id*.

---

[5]The Supreme Court, in the context of qualified immunity, draws no distinction between suits brought against federal officials under the Constitution and suits brought against state officials pursuant to 42 U.S.C. § 1983. *Butz v. Economou*, 438 U.S. 478, 504 (1978).

The Delaware Defendants stress that any harm inflicted on the Decedent or his family was not inflicted by the state. The Delaware Defendants argue that *Gonzales* bars any claim made by Mayrides involving any decision of whether to prosecute Dodd. The Delaware Defendants rely on the holding of the Supreme Court, in *Town of Castle Rock, Colorado v. Gonzales*, to show that any ambiguity remaining after *DeShaney*, regarding the ability of one individual to bring a § 1983 claim for an alleged police failure to prosecute a third party, has been clarified. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005). Section 1983 "did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented." *Id*. at 756 (holding that the failure of a police department to enforce a protective order did not create a proprety interest enforcable under the U.S. Constitution).

The Sixth Circuit has recognized several times the possibility of of holding state actors liable for private acts under the state-created danger theory. *See Kallstrom*, 136 F.3d at 1066; *Sargi v. Kent City Bd. of Educ.*, 70 F. 3d 907, 912-13 (6th Cir. 1995); *Jones v. City of Carlisle*, 3 F.3d 945, 949-50 (6th Cir. 1993). Where, however, the allegations involving the police officer's response concerned only dispatching an officer to the scene or clearing a 911 call, the Sixth Circuit has explicitly held that there were no affirmative acts giving rise to a constitutional violation. *May v. Franklin County Comm'rs*, 437 F.3d 579, 584, 586 (6th Cir. 2006). *See also Brooks v. Knapp*, 221 Fed. Appx. 402, 407 (6th Cir. 2007) (finding that "[t]he decedent had...already exposed herself to the risk of injury. The officers' action or inaction, the court held, had not made her "more vulnerable" to the risk").

The Sixth Circuit has also recognized the possibility of finding a violation of equal

protection rights where victims of domestic violence are discriminated against by state agents. *See May*, 437 F.3d at 582 ("May abandoned her equal protection claim in the district court, and that issue is not involved in this appeal.").

### b. Clearly Established Right

In *Pearson v. Callahan*, the Supreme Court held that rigid adherence to Saucier's two-part test is not mandated and, therefore, lower federal courts have some flexibility to depart from the protocol and consider first the issue of whether a right is clearly established. *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009) (stating "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional question at all"). The Supreme Court stated that "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." *Id*. Further, the Court noted that, "when qualified immunity is asserted at the pleading stage," Saucier's two step inquiry "is an uncomfortable exercise where . . . the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." *Id*. at 819.

As stated above, this Court can not say that after discovery Mayrides would not be able to make out a constitutional violation based on the acts of the government officials involved. Even if Mayrides could make out a constitutional violation, however, such a violation would not involve a right that is clearly established. Case law from the Sixth Circuit does not establish clear constitutional violations regarding the substantive due process or equal protection claims at

issue here. *May*, 437 F.3d at 586; *Perry v. Wiles*, No. 97-3372, 1998 U.S. App. Lexis 7621, at *10 (6th Cir. Ohio Apr. 15, 1998).[6]

## B. State Law Claims

In her Amended Complaint, Mayrides also brings certain state law claims for negligence, obstruction of justice, and wrongful death under Ohio law. As discussed above, the Delaware Defendants are entitled to judgment on the pleadings on the the federal substantive due process and equal protection claims because of qualified immunity. Having disposed of the federal claims, this Court will remand all remaining state law claims to state court. This Court has the discretion to dismiss pendent state law claims if all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). Further, the Sixth Circuit has found it appropriate to remand cases to state court where the case "turns upon state law and which would be better resolved by the courts" of the state in question. DePiero v. City of Macedonia, 180 F.3d 770, 790 (6th Cir.1999).

---

[6]*But see Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 2009 U.S. App. LEXIS 18422, *50-51 (2d Cir. N.Y. Aug. 18, 2009) ("We therefore find that the state-created danger theory, at the time of defendants' actions here, clearly established that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages intentional violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply.").

## V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** the Plaintiff's Motion for Leave to File a Sur-Reply and **GRANTS** the Delaware Defendants' Motion for Judgment on the Pleadings. All that remains in the case are state law claims and the case is hereby **REMANDED** to state court.

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: September 24, 2009**